UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
MILWAUKEE DIVISION

U.S. DISTRICT COURT
EASTERN DISTRICT-WI
FILED

2014 JAN 10 P 12: 57

JON A. SANFILIPPO
CLERK

LAUREN HOWIE LAUR
12501 N. Circle Drive
Mequon, WI 53092

    Plaintiff,

vs.

Case No. **14-C-0027**

Hon.

CITY OF MEQUON POLICE DEPARTMENT
11300 N. Buntrock Avenue
Mequon, WI 53092

**VERIFIED COMPLAINT AND
DEMAND FOR A JURY TRIAL**

    Defendant,

and

The Estate of MEQUON POLICE OFFICER
TYLER GAIDISH
11300 N. Buntrock Avenue
Mequon, WI 53092

    Defendant,

and

MEQUON POLICE OFFICER MICHAEL KRANZ
11300 N. Buntrock Avenue
Mequon, WI 53092

    Defendant.

---

**VERIFIED COMPLAINT AND
DEMAND FOR A JURY TRIAL**

---

**NOW COMES** Plaintiff, Lauren Howie Laur, by her counsel, LAW OFFICES OF KIMBERLY POWERS, S.C., by Attorney Kimberly Powers and as for claims against Defendants, alleges and shows the court as follows:

## JURISDICTION AND VENUE

1. This is a 42 U.S.C. § 1983 statutory action seeking damages, attorney fees, and all other damages available from the Defendants for violation of the Plaintiff's rights to a reasonable search and seizure.

2. This court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, as this case involves a federal question, and 28 U.S.C. §1343, as this case involves the deprivation of civil rights.

3. Venue with regard to Plaintiff's claims are vested in this Court pursuant to 28 U.S.C. §1391(b), *inter alia*. The unlawful actions given rise to the claims herein were committed in the Eastern Judicial District of the State of Wisconsin.

## PARTIES

4. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 3, above.

5. Plaintiff is an adult female resident of the State of Wisconsin, Ozaukee County, who resides at 12501 N. Circle Drive, Mequon, Wisconsin 53092.

6. Defendant City of Mequon Police Department (Hereinafter referred to as MEQUON), was, at all times material herein, a Wisconsin municipal corporation with a principal address of 11300 N. Buntrock Avenue, Mequon, Wisconsin 53092. At all times relevant, MEQUON acted "under color of law" within the meaning of 42 U.S.C § 1983.

2

7. Defendant, the Estate of Tyler Gaidish, is named on behalf of Officer Tyler Gaidish, deceased (Hereinafter referred to as GADISH) who at all times material, was an adult individual who, upon information and belief, resided in Washington or Milwaukee County, Wisconsin, and at all times relevant he was a Police Officer, employed by the City of Mequon Police Department, 11300 N. Buntrock Avenue, Mequon, Wisconsin 53092.

8. GAIDISH is being sued in both his official capacity, since at all times material herein, GAIDISH acted "under color of law" within the meaning of 42 U.S.C. § 1983, as well as in his individual capacity.

7. Defendant, Officer Michael Kranz (Hereinafter referred to as KRANZ), is an adult individual residing in Ozaukee County, Wisconsin, and on or about February 25, 2011, he was a Police Officer employed with the City of Mequon Police Department, 11300 N. Buntrock Avenue, Mequon, Wisconsin 53092.

9. KRANZ is being sued in both his official capacity, since at all times material herein, KRANZ acted "under color of law" within the meaning of 42 U.S.C. § 1983, as well as in his individual capacity.

## FACTS

10. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 9, above.

11. On Friday, February 25, 2011 at approximately 1:07 a.m., GAIDISH, who was on duty, in full MEQUON uniform and operating a MEQUON patrol vehicle, received a dispatch of a possible drunk driver.

12. GAIDISH made contact with the driver, and identified her verbally and via a Wisconsin driver's license as, Plaintiff, Lauren K. Howie Laur.

13. GAIDISH confirmed through the Department of Transportation that the driver of the SUV was Lauren Howie Laur and that she had a valid Wisconsin driver's license with no Operating While Intoxicated convictions on record.

14. GAIDISH reportedly made contact with Plaintiff and reported that Plaintiff appeared disoriented and confused with slow and relaxed speech and a slight odor of alcohol coming from her breath.

15. GAIDISH requested Plaintiff to perform field sobriety tests, which she complied.

16. According to the police report, GAIDISH informed Plaintiff that he intended to have her vehicle towed and asked if the vehicle contained any drugs or weapons, to which Plaintiff replied, "I'm sorry, I have a pipe and a little bit of weed in there."

17. At approximately 1:43 a.m., GAIDISH advised Plaintiff that she was under arrest for Possession of a Controlled Substance and Possession of Drug Paraphernalia.

18. After GAIDISH searched and handcuffed Plaintiff, he placed her in backseat of GAIDISH's patrol vehicle.

19. GAIDISH transported Plaintiff to Columbia St. Mary's Hospital, in Oauakee County, where a drug evaluation of Plaintiff was conducted. Plaintiff consented to evidentiary chemical tests. The blood tests results were reportedly .062.

20. At approximately 4:10 a.m., GAIDISH transported Plaintiff to MEQUON for booking. KRANZ, who was wearing a MEQUON uniform, assisted GAIDISH with the booking of Plaintiff.

21. At the time of the above-referenced arrest, Plaintiff, 21, had never been arrested. She was terrified at the thought of spending one second behind bars. Plaintiff's fear persisted throughout her contact with GAIDISH and KRANZ.

22. Upon information and belief a female officer by the name of Barbara was at the police department at the time Plaintiff was brought in for booking.

23. Plaintiff was *photographed* and fingerprinted by KRANZ.

24. Plaintiff participated in small talk and was interviewed by GAIDISH and KRANZ. At this time, Plaintiff mentioned that she was a waitress at the Tulip Restaurant in Milwaukee, Wisconsin.

25. At approximately 4:38 a.m., which is a period of time after Plaintiff had already been fingerprinted, photographed and searched, KRANZ (who is a male officer) then took additional photographs of Plaintiff's tattoos, which required Plaintiff to lift her blouse so the KRANZ could photograph Plaintiff's partially clothed upper (breast/rib cage) and lower torso (pubic area).

26. Prior to the time KRANZ asked Plaintiff if he could photograph her tattoos (that were underneath Plaintiff's clothing) according to a police video obtained by Plaintiff's counsel, KRANZ made no effort to secure a female take the photos of Plaintiff's partially clothed upper and lower torso.

27. KRANZ never informed Plaintiff that she could refuse to allow him to take the photos of her rib cage/breast area and pelvis and that her refusal would in no way be used against her.

28. Plaintiff was never asked if she desired to consult with an attorney before she submitted to the lewd photos.

29. KRANZ did not take any actions to ensure Plaintiff that other officers did not see her with her blouse lifted and her lower torso exposed.

5

30. At the time Plaintiff was requested to submit to the above-referenced lewd photos and throughout the taking of the photos, she remained terrified of spending any time in jail and did not want to upset KRANZ in any manner for fear that she would be incarcerated.

31. The police report makes no reference of Plaintiff's *facial scars or scars on her feet*. However, Plaintiff's two tattoos – one under her breasts and one in her pubic area - made it into the police report. There is simply no legitimate, legal or constitutional reason why tattoos in two bodily areas that could not even be observed if Plaintiff was in a bikini, were photographed.

32. Plaintiff never attempted to conceal her identity.

33. At the time KRANZ was taking the photographs of Plaintiff's partially clothed upper and lower torso, Plaintiff had previously been searched *twice* – once at a BP gas station by GAIDISH, and again at the Mequon Police Department. Neither of these searches revealed any weapons or contraband.

34. Since Plaintiff was searched twice prior to Kranz' actions of requesting Plaintiff to submit the photographs, it is clear that the actions amounted to an unlawful strip search of Plaintiff.

35. According to Plaintiff's mother, Mary Kay Howie, after she arrived at the Mequon Police Department, Ms. Howie met with GAIDISH and Plaintiff prior to Plaintiff's release.

36. During the above-referenced meeting, GAIDISH kept touching Plaintiff's right shoulder and her upper arm. While touching Plaintiff, GAIDISH would smile and stare directly at Plaintiff.

37. Prior to Plaintiff and her mother leaving the Police Department, Defendant, GAIDISH shook Plaintiff's hand. While shaking Plaintiff's hand, GAIDISH placed his other hand over Plaintiff's hand so as to enclose her hand with his two hands.

38. During that time, GAIDISH stated "I am sorry we had to meet under these circumstances."

39. Several weeks later, GAIDISH went to the Tulip Restaurant while Plaintiff was working. Plaintiff saw GAIDISH seated by himself at the bar looking in her direction and she purposely avoided him.

## FIRST CAUSE OF ACTION

## VIOLATION OF – 42 U.S.C. § 1983

40. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 39, above.

41. Defendants unlawfully searched Plaintiff while at the Mequon Police Department in violation of the Fourth Amendment to the U.S. Constitution and in violation of her right to a reasonable search and seizure as protected by 42 U.S.C. § 1983.

42. As a direct, foreseeable, and proximate result of Defendant's unlawful search, Plaintiff has suffered injury and damages in the form of dramatic changes to her behavior, difficulty concentrating, trouble sleeping, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

## SECOND CAUSE OF ACTION

## NEGLIGENCE /VIOLATION OF STATUTE – SECTION 968.255 et seq.

43. Plaintiff hereby incorporates by reference each and every allegation contained in Paragraphs 1 through 42, above.

7

44. Section 968.255(b) defines a "Strip search" as follows: a search in which a detained persons genitals, pubic area, buttock or anus, or a detained female person's breast, is uncovered and either exposed to view or is touched by a person conducting the search.

45. Section 968.255(2)(a) states that no person may be the subject of a strip search unless he or she is detained person and if (a) the person conducting the search is of the same sex as the person detained . . . .

46. Section 968.255(2)(b) states that no person may be the subject of a strip search unless he or she is detained person and if (b) the detained person is not exposed to the view of any person not conducting the search.

47. Section 968.255(2)(c) states that no person may be the subject of a strip search unless he or she is detained person and if (c) the search is not reproduced through a visual or sound recording.

48. As stated above, Plaintiff was searched twice prior to the time GAIDISH took the lewd photos of Plaintiff.

49. The photos depict Plaintiff lifting her shirt so that her bra is visible and lowering her pants exposing pubic hairs.

50. No attempt was made to secure a female police officer to take the photos.

51. No attempt was made to assure that the area where Plaintiff was photographed was out of view.

52. The strip search was photographed and the photos remain part of Plaintiff's police file with the Mequon Police Department.

53. As a direct, foreseeable, and proximate result of Defendants collective violation of Sections 968.255, Plaintiff has suffered injury and damages in the form of dramatic changes to

her behavior, difficulty concentrating, trouble sleeping, physical pain and suffering, and emotional distress. These damages continue into the present and will continue into the foreseeable future.

**WHEREFORE,** Plaintiff respectfully requests that this Court:

A. Issue a declaratory judgment that the acts, policies, practices and procedures of Defendants violated the rights of the Plaintiff under the Fourth Amendment to the United States Constitution, as protected by 42 U.S.C. § 1983, *et seq.*;

B. Issue a permanent injunction against future acts, policies, practices and procedures that violate the Fourth Amendment to the United States Constitution, as protected by 42 U.S.C. § 1983, *et seq.*, by Defendants;

C. Order Defendants to make Plaintiff whole by providing appropriate compensatory, special and punitive damages, prejudgment and post-judgment interest, and reimbursement for other benefits and expenses in an amount to be shown at trial;

D. Grant to Plaintiff her attorney fees, costs and disbursements pursuant to 42 U.S.C. § 1983, and all other applicable provisions; and

E. Grant to Plaintiff whatever other relief that Plaintiff is so entitled and also that this Court deems necessary and proper.

Respectfully submitted,

**LAW OFFICES OF KIMBERLY POWERS, S.C**

_____
Kimberly Powers SBM 1059040
Attorney for Plaintiff, Lauren Howie Laur
PO Box 447
Brookfield, WI 53008
P: (262) 788-7700
F: (262) 554-6136
kpowers@kpowerslaw.com
Kimberlyjd13@aol.com

**PLAINTIFF DEMANDS A JURY OF TWELVE AS TO ALL TRIABLE ISSUES**

Dated this _____ day of January 2014.

Respectfully submitted,

**LAW OFFICES OF KIMBERLY POWERS, S.C**

_____
Kimberly Powers SBM 1059040
Attorney for Plaintiff, Lauren Howie Laur
PO Box 447
Brookfield, WI 53008
P: (262) 788-7700
F: (262) 554-6136
kpowers@kpowerslaw.com
Kimberlyjd13@aol.com

## VERIFICATION

I, Lauren Howie Laur, declare as follows:

1. I have personal knowledge of the facts set out in the above-referenced Verified Complaint except as to those matters stated upon information and belief, and if called on to testify, I would competently testify as to matters stated above.

2. I verify under penalty of perjury under the laws of the United States of America that the factual statements in the above-referenced Verified Complaint regarding myself, my activities and my experiences are true and correct. 28 U.S.C. 1746.

Executed on January 10th, 2014

Lauren Howie Laur
Plaintiff