# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

LAUREN HOWIE LAUR,

        Plaintiff,

    v.

CITY OF MEQUON, CITY OF MEQUON
POLICE DEPARTMENT (*sic*), THE ESTATE
OF TYLER GAIDISH (*sic*) and MICHAEL
KRANZ,

        Defendants.

Case No:    14 CV 27

## MOTION TO BAR MARY KAY HOWIE LAUR
## AS EXPERT WITNESS AND
## MOTION IN LIMINE TO BAR HER OPINIONS AND TREATMENT

COME NOW, the defendants herein and move to bar Mary Kay Howie Laur from testifying as an expert witness in this case, and request that the court enter an order in limine that she may not give any opinions nor describe any treatment she provided to the plaintiff;

AS GROUNDS for this motion, defendants refer to the court's file herein, plaintiff's designation of Mary Kay Howie Laur as an expert witness in this case, and the following memorandum.

### FACTUAL BACKGROUND

This case involves a claim for illegal searches of a person arrested for operating under the influence of alcohol and marijuana. Among other things, plaintiff alleges she was "strip searched" in contravention of the 4th Amendment. The arrest occurred on or about February 25, 2011.

As damages, plaintiff alleges that she has suffered mental anxiety, panic attacks, depression and other mental health deficits. Plaintiff has named one expert witness in support of her case: Mary Kay Howie Laur. Mary Laur is described as a psychotherapy counselor.

Mary Laur is also the mother of the plaintiff, Lauren Howie Laur. Per plaintiff's expert disclosure, Mary Laur plans to testify that she has treated the plaintiff since the arrest. Per the disclosure, Mary Laur will provide opinions that plaintiff has experienced anxiety, distrust of men, depression, panic attacks, nightmares "and pain and suffering." (Plaintiff's expert disclosure of September 9, 2014).

## ARGUMENT

As stated, plaintiff's only named expert is the biological mother of the plaintiff. She should not be allowed to testify as an expert in this case, because her alleged treatment of her daughter is illegal under Wisconsin law.

Psychotherapists are licensed by the State of Wisconsin. As such, psychotherapists are required to follow the rules which authorize their practice. In this case, Mary Laur's treatment of the plaintiff violated the terms of her licensure.

Psychotherapist licensing in Wisconsin is governed by Wis. Stats. Chapter 457. Among other things, Ch. 457 created the Marriage and Family Therapy, Professional Counseling, and Social Work Examining Board. (457.01(2)). The Examining Board is empowered to draft regulations to put the statutory regime into practice. The regulations are found in the Wisconsin Administrative Code, under the heading MPSW.

MPSW Chapter 20 is entitled "Conduct." MPSW § 20.02 is entitled "**Unprofessional conduct.**" (emphasis in original).

MPSW § 20.02 says:

> *Unprofessional conduct* related to the practice under a credential issued under ch. 457, Stats., *includes*, but is not limited to, *engaging in*, attempting to engage in, or aiding or abetting *the following conduct:*
>
> (13) *Failing to avoid dual relationships or relationships that may impair the credentialed person's objectivity or create a conflict of interest. Dual relationships prohibited to credentialed persons include the credentialed person treating the credentialed person's* employers, employees, supervisors, supervisees, close friends or <u>relatives</u>, and any other person with whom the credentialed person shares any important continuing relationship. (emphasis supplied).

In plain English, the regulation governing Mary Laur's practice of psychotherapy prohibits her from treating family members. The prohibition is designed to ensure that the psychotherapist's detached, professional judgment is not compromised.

This rationale behind this rule is discussed in detail in the American Medical Association's Code of Medical Ethics. AMA Ethics Opinion 8.19 (Exhibit 1 attached hereto) says that "physicians generally should not treat themselves or members of their immediate families." In part this is because, when treating a family member, a doctor's professional objectivity may be compromised. Or, the doctor's personal feelings may unduly influence his professional judgment. A doctor may fail to ask sensitive questions when taking a history, or the patient may be reluctant to disclose sensitive personal information. Concerns regarding patient autonomy and informed consent are also raised.

Defendants submit that these concerns are even more significant where the treatment involves mental problems.

Plaintiff may suggest that this regulation is merely advisory--that it is not binding. The language of the regulation belies that argument. The second sentence of subsection (13) says "Dual relationships **prohibited** to credentialed persons include...."

Had Mary Laur followed the legal requirements governing her license as a psychotherapist she would not have treated the plaintiff in the first instance. Her illegal conduct should not be countenanced by this court. The court should bar Mary Laur's expert testimony and should preclude her from testifying about her treatment of the plaintiff, her diagnoses or any other testimony in a professional capacity.

Dated: June 18, 2015

By: /S/
Peter M. Farb
State Bar No: 1019032
Attorney for Defendants, City of Mequon,
City of Mequon Police Department (*sic*), The
Estate of Tyler Gaidish (*sic*) and Michael
Kranz
LAW OFFICES OF THOMAS P. STILP
11800 West Park Place, Suite 210
PO Box 245023
Milwaukee, WI 53224-9523
(414) 577-4328
(603) 334-7164 (fax)
Email: Peter.Farb@libertymutual.com

## Opinion 8.19 - Self-Treatment or Treatment of Immediate Family Members

Physicians generally should not treat themselves or members of their immediate families. Professional objectivity may be compromised when an immediate family member or the physician is the patient; the physician's personal feelings may unduly influence his or her professional medical judgment, thereby interfering with the care being delivered. Physicians may fail to probe sensitive areas when taking the medical history or may fail to perform intimate parts of the physical examination. Similarly, patients may feel uncomfortable disclosing sensitive information or undergoing an intimate examination when the physician is an immediate family member. This discomfort is particularly the case when the patient is a minor child, and sensitive or intimate care should especially be avoided for such patients. When treating themselves or immediate family members, physicians may be inclined to treat problems that are beyond their expertise or training. If tensions develop in a physician's professional relationship with a family member, perhaps as a result of a negative medical outcome, such difficulties may be carried over into the family member's personal relationship with the physician.

Concerns regarding patient autonomy and informed consent are also relevant when physicians attempt to treat members of their immediate family. Family members may be reluctant to state their preference for another physician or decline a recommendation for fear of offending the physician. In particular, minor children will generally not feel free to refuse care from their parents. Likewise, physicians may feel obligated to provide care to immediate family members even if they feel uncomfortable providing care.

It would not always be inappropriate to undertake self-treatment or treatment of immediate family members. In emergency settings or isolated settings where there is no other qualified physician available, physicians should not hesitate to treat themselves or family members until another physician becomes available. In addition, while physicians should not serve as a primary or regular care provider for immediate family members, there are situations in which routine care is acceptable for short-term, minor problems. Except in emergencies, it is not appropriate for physicians to write prescriptions for controlled substances for themselves or immediate family members. (I, II, IV)

Issued June 1993

Copyright 1995-2015 American Medical Association All rights reserved.
Contact Us | Advertise with Us | Terms of Use | Privacy Policy | Code of Conduct | Sitemap

EXHIBIT 1